***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
3. All parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of parties.
4. The date of the alleged injury that is the subject of this claim was March 5, 2007.
5. Plaintiff's job title was machinist/welder.
6. As of March 5, 2007, an employee/employer relationship existed between Plaintiff and Defendant-Employer.
7. As of March 5, 2007, Defendant-Employer was insured by American Home Assurance Company.
8. Defendants accepted this claim on a medicals-only basis.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Plaintiff's Medical Records
 • Exhibit 3: Plaintiff's Discovery Responses
 • Exhibit 4: Industrial Commission Forms
 • Exhibit 5: Defendants' Discovery Responses
 • Exhibit 6: Correspondence regarding Plaintiff's REDA Claim
 ***********
The following were received into evidence by the Deputy Commissioner as:
 DEPOSITIONS *Page 3 
1. Oral deposition of Thomas Florian, M.D., taken on June 26, 2008;
2. Oral deposition of David R. Allen, Jr., M.D., taken on July 22, 2008.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 45 yeas old at the time of hearing before the Deputy Commissioner, with a date of birth of April 30, 1964. He went to school through the ninth grade and then later got his GED. He is a journeyman welder and his work history has been primarily in fabricating and machining steel and doing welding and electrical work.
2. Plaintiff began working for Defendant-Employer in February 2007. He had also worked for Defendant-Employer between 2002 and 2004.
3. During his time with Defendant-Employer in 2007 prior to his injury, Plaintiff had no physical limitations on his physical ability to do the work assigned. Plaintiff's job duties included reading blueprints; cutting, fitting, and welding steel; and installing the products in the field. Among other things, Plaintiff's job involved routinely lifting 50 pounds, going up ladders, and dragging lengths of heavy welding cords 100 to 200 feet long.
4. On the morning of March 5, 2007, Plaintiff was on a job for Defendant-Employer at a Sam's Club store. He was working in the ceiling when he fell through, falling 10 to 12 feet and hitting a machine before landing on the concrete floor.
5. Plaintiff went to the emergency room at Southeastern Regional Medical Center, where he complained of pain in his neck, low back, right shoulder, left forearm, right ankle, right *Page 4 
knee, and chest. X-rays were negative for fractures. Plaintiff was diagnosed with multiple contusions.
6. Defendant-Employer directed Plaintiff to the practice of Dr. Florian, who specializes in physical medicine, rehabilitation, and pain management.
7. Plaintiff presented to Matthew Davis, PA-C on March 6, 2007. Plaintiff described the fall the day before and reported that he had a history of prior back injury in 1997. Upon examination of his low back, Plaintiff's range of motion was limited due to pain, and Mr. Davis noted positive Waddell's signs and positive bilateral straight leg raises. Mr. Davis diagnosed multiple contusions and restricted Plaintiff to no lifting; no repetitive bending; no pushing or pulling; no squatting, kneeling, or crawling; and no climbing.
8. Plaintiff saw Dr. Florian for the first time on March 20, 2007. Dr. Florian opined that Plaintiff had positive Waddell's signs, although, as he noted, Plaintiff did not perform the Waddell's testing maneuvers because of his stated level of pain. Plaintiff characterized his pain as being 10 out of 10. Dr. Florian assessed Plaintiff as having an exacerbation of pre-existing "back problems" and scheduled him for an MRI.
9. On April 17, 2007, Plaintiff underwent a lumbar MRI. The MRI revealed that Plaintiff had degenerative changes at L3-4 through L5-S1, with mild bilateral symmetrica neural formainal narrowing, but no disc herniation, spinal canal stenosis, or acute abnormality at any level.
10. Plaintiff followed up with Dr. Florian on May 1, 2007. Dr. Florian characterized Plaintiff as having "complaints of low back pain without any abnormal physiological findings." Dr. Florian noted Plaintiff's non-cooperation with the physical examination and physical *Page 5 
therapy, and he concluded that Plaintiff was motivated by secondary gain. Dr. Florian released Plaintiff to return to work without restrictions.
11. Prior to being released to full duty by Dr. Florian, Plaintiff tried to do light duty work with Defendant-Employer in early March 2007, shortly after his accident. Plaintiff was paid for two days but was physically unable to do the duties assigned. Defendant-Employer's owner, Gene Bennett told Plaintiff to leave the premises and not to return until he could do full duty.
12. Shortly after his release by Dr. Florian, Defendant-Employer fired Plaintiff, and he has not worked or looked for work since May 1, 2007. As Mr. Bennett testified, Plaintiff did come back to work after Dr. Florian released him, whereupon Mr. Bennett and Plaintiff had a disagreement over Plaintiff's workers' compensation claim which resulted in Plaintiff's termination. As Mr. Bennett further testified, Plaintiff did not "refuse" to work at that point.
13. On June 11, 2007, Plaintiff went to the emergency room with low back pain radiating down his left leg.
14. Plaintiff presented to Dr. David R. Allen, Jr., a board-certified orthopedic surgeon, on August 30, 2007 with a number of complaints, but with his primary complaint being low back pain. Dr. Allen preformed injections to address Plaintiff's neck pain and low back pain, and he assigned restrictions of no standing for more than 15 minutes and no sitting for more than 15 minutes. He also referred Plaintiff for pain management.
15. Dr. Allen examined Plaintiff for the last time on March 25, 2008.
16. On May 9, 2008, Plaintiff underwent another lumbar MRI, which showed lower lumbar degenerative disc disease and a prominent L4-5 right paracentral disc herniation. *Page 6 
17. Dr. Florian testified that when he examined Plaintiff, he became convinced that Plaintiff was magnifying his symptoms. Dr. Florian testified that Plaintiff had the "most florid" positive Waddell's testing he had ever seen. Dr. Florian believed Plaintiff was at maximum medical improvement as of May 1, 2007.
18. Based on his review of the April 17, 2007 MRI film vis-à-vis the report from the May 9, 2008 MRI, which he found to be "dramatically different," Dr. Florian testified that he believed that Plaintiff had sustained a new injury between the MRIs. Dr. Florian did note disc bulges at L4-5 and L5-S1 on the April 17, 2007 MRI, but he further stated that the L4-5 disc herniation reported on the May 9, 2008 MRI was an "entirely different finding."
19. As Dr. Allen testified, he could not determine that the May 9, 2008 MRI vis-à-vis the April 17, 2007 MRI showed a new injury. As Dr. Allen testified, it is possible that the L4-5 disc herniation seen on the later MRI represents a progression from the condition seen on the earlier MRI. As Dr. Allen further testified, if Plaintiff never had back problems, then fell through a roof and had the acute onset of low back pain, which slowly got worse over time, then "it is very possible . . . even likely . . . that this could be a progression of the condition." Dr. Allen further noted that, if Plaintiff was working and doing heavy lifting without back trouble prior to his March 5, 2007 fall, that would be a significant factor in determining that the disc herniation found on the May 9, 2008 MRI was a progression from the injury sustained in the fall.
20. As Dr. Allen further testified, the May 9, 2008 MRI shows "significant pathology," and it is not unreasonable for Plaintiff to have been laid up in bed with tremendous pain related to the disc herniation. As Dr. Allen further testified, it is likely that a decompression surgery would help Plaintiff's low back symptoms. *Page 7 
21. The Full Commission assigns greater weight to the testimony of Dr. Allen than to that of Dr. Florian. Dr. Allen is an orthopedist, while Dr. Florian is not. Dr. Florian's office seems to have taken on a hostile attitude toward Plaintiff from the beginning of his treatment with them, and it appears that Dr. Florian prematurely released Plaintiff from treatment with a premature finding of maximum medical improvement. Also, Dr. Florian was not asked about the possibility that the later MRI finding represented a progression of the condition seen on the earlier MRI.
22. As of the date of the hearing before the Deputy Commissioner, Plaintiff still had significant low back pain. As of the date of the hearing before the Deputy Commissioner, he was essentially laid up with his back pain and engaged in very little activity.
23. As of the date of the hearing before the Deputy Commissioner, Plaintiff had not had any accidents or injuries since his March 5, 2007 fall.
24. Because Plaintiff had been working for Defendant-Employer for less than a month in 2007 when he was hurt, Defendants produced a Form 22 utilizing the data for a similarly situated co-worker, Charlie Bennett, who worked the same hours as Plaintiff and was paid at the same rate. The Form 22 shows Mr. Bennett earned $23,472.50 over the 52 weeks preceding Plaintiff's accident.
25. The treatment that Plaintiff has heretofore had for his low back condition with Dr. Allen and other providers since his release by Dr. Florian has been reasonably required to effect a cure and/or provide relief to Plaintiff.
26. Further treatment is reasonably required for Plaintiff's low back condition to effect a cure, provide relief and/or lessen the period of Plaintiff's disability.
 *********** *Page 8 CONCLUSIONS OF LAW
1. Based upon the greater weight of the evidence and medical testimony, particularly assigning greater weight to Dr. Allen's testimony, the Full Commission concludes that Plaintiff's current low back condition is a compensable progression from the injuries he sustained in his March 5, 2007 fall. See Perez v. AmericanAirlines, 174 N.C. App. 128 (2005).
2. In the pre-trial agreement, Defendants preserved the issue of whether Plaintiff constructively refused suitable employment by refusing to work for Defendant-Employer after being released by Dr. Florian on May 1, 2007. Defendants did not argue this position in their Contentions, and the Full Commission concludes, based on the evidence of record, that Plaintiff did not refuse suitable employment with Defendant-Employer on or after May 1, 2007.
3. Based on Plaintiff's current physical restrictions and condition, and his limited education, and further because his work experience has been solely in physical, heavy-duty work, the Full Commission concludes that it would have been futile, since Plaintiff sustained his injury on March 5, 2007, for him to have sought employment suitable to his abilities in the competitive economy. As such, Plaintiff is entitled to receive temporary total disability compensation for the entire period from March 5, 2007 through the present (except for the two days he returned to work with Defendant-Employer at light duty) and ongoing. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have Defendants provide him with further medical treatment for his low back condition, including but not limited to surgery, physical therapy, diagnostic testing, prescriptions, referrals and mileage. Plaintiff is also entitled to have Defendants pay for the treatment that Plaintiff has received for his low back condition since his release by Dr. Florian on May 1, 2007. N.C. Gen. Stat. §§ 97-2(19) and 97-25. *Page 9 
5. Based upon the Form 22, Plaintiff's average weekly wage is $451.39, which yields a compensation rate of $300.94. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendants SHALL pay to Plaintiff, in a lump sum, back temporary total disability compensation for the period from March 6, 2007 through the present at the rate of $300.94 per week, less two days for Plaintiff's light-duty return to work. Defendants SHALL also continue to pay weekly TTD compensation to Plaintiff in the amount of $300.94 until Plaintiff returns to work or further Order of the Industrial Commission.
2. As Plaintiff's attorney's fee, Defendants shall pay one-fourth of the lump sum award figured per Paragraph 1 above directly to Plaintiff's counsel, such amount to be paid out of the lump sum and not in addition to it. Defendants shall also make every fourth ongoing TTD check payable directly to Plaintiff's counsel.
3. Dr. Allen IS HEREBY DESIGNATED as Plaintiff's treating physician, and Defendants SHALL authorize and pay for the treatment that he recommends for Plaintiff's compensable low back condition, including but not limited to surgery, physical therapy, diagnostic testing, prescriptions, referrals and mileage.
4. Defendants SHALL also pay for any and all medical treatment that Plaintiff has received for his compensable low back condition since his release by Dr. Florian on May 1, 2007, including but not limited to diagnostic testing, prescriptions and mileage. To the extent *Page 10 
that Plaintiff or any third party has paid for any such treatment, Defendants SHALL reimburse such payor in full.
5. Defendant shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to each of the following providers, in the amount shown or the amount actually billed, whichever is less: $520.00 to Dr. Florian, and; $551.00 to Dr. Allen.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1